## Jane Roberts v. Ætna Life Insurance Co.

1. LIFE INSURANCE—*Payment of Premiums, a Condition Precedent.*—The payment of premiums by the insured is a condition precedent, or at least concurrent with, the assuming of any obligation by the insurance company, under such terms and conditions as are embodied in the contract of insurance.

2. SAME—*Duty of the Insured to Pay the Installments of the Premium.*—It is the duty of the insured, if he desires to continue the contract, to pay the installments of the premium, and a failure on his part to do so will terminate the policy.

Assumpsit, on a policy of life insurance. Error to the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed March 20, 1902.

Statement.—Defendant in error, an insurance company, issued a policy insuring the life of David Roberts, and plaintiff in error was named therein as beneficiary. The policy of insurance was ·issued March 14, 1899. At that time David Roberts gave his four notes of $6.25 each for the premiums for periods aggregating one year, the first of which was payable one month from the date of the policy, and the payment thereof was provided to carry insurance for two months; the second, payable two months from the date of the policy, the payment of which continued the insurance for four months; the third of which was payable three months from the date of the policy, the payment of which continued the insurance for seven months, and the fourth of which was payable four months from the date of the policy, payment of which continued the insurance for twelve months from the date of the policy. These notes each provided, as also does the policy, that in case of the non-payment of any one of them at maturity, the insurance sha'l thereupon cease. The policy provides that in case of loss occurring before all or any of these notes mature, they shall all be paid by deducting their respective amounts from the loss due under the policy.

The first premium note became due April 14, 1899. Payment thereof was not made on April 14th, the date of its maturity, but was made and accepted by defendant in error April 17th. The next note became due May 14, 1899, and was not paid. David Roberts did not receive the injury which caused his death until July 10, 1899, and he lived until July 26, 1899. There is evidence that the company sent around to Mr. Roberts a number of times for the money

that was due, and told him that these payments were due, and asked for payment.

The notes were produced at the trial from the custody of the defendant, and are not marked canceled.  The policy provides that possession of the notes shall be deemed conclusive proof that they are not paid.  June 14th the third note fell due and was not paid.  This maturity occurred twenty-six days before the injury to Roberts, and this note, like the others, was produced from the custody of the defendant uncanceled.  July 10th Roberts received the injury which proved fatal on the 26th of the same month. On the 13th or 14th of July, the sister of David Roberts, who is an attorney-at-law, went to the office of the company and offered, on behalf of David Roberts, to pay all of the unpaid notes which were due, and tendered the money therefor.  After some conversation between her and the agent of the defendant in error as to the character of David Roberts' injuries, the agent refused to accept payment upon the ground that the insurance had lapsed.  David Roberts lived at least twelve days after that, and the last premium note fell due either that day or the day after.

Defendant, at the time proof of death was made, replied, "Inasmuch as the insurance under the policy mentioned expired the 14th of May by reason of the non-payment of the second note given in connection with the issue of said policy, there could be no claim under it."  May 14th was Sunday.

The issues were submitted to a jury.  At the conclusion of the evidence proffered by the plaintiff, the court peremptorily instructed the jury to return a verdict for defendant. To review the judgment entered upon such verdict, this writ of error is prosecuted.

JULE F. BROWER and SAMUEL B. KING, attorneys for plaintiff in error.

DANIEL F. FLANNERY, attorney for defendant in error.

MR. JUSTICE SEARS delivered the opinion of the court.
The learned counsel for plaintiff in error contend that

the policy of insurance sued on constitutes a valid contract and may be enforced, although the premiums provided for, subsequent to the first premium, have not been paid. This contention is based upon two propositions, viz. : First, that the provision of the policy for payment of premiums does not constitute any obligation upon the beneficiary, and hence any failure to comply with such condition can not affect the right of the beneficiary to enforce the contract; and second, that if payment of premiums is held to constitute a condition precedent to any right of the beneficiary under the policy, then such condition must be held to have been waived by retaining the notes given by David Roberts to evidence amounts due or to become due as premiums.

We are unable to see any logical ground upon which it could be held that the beneficiary named in a life insurance policy gains thereby vested rights which can not be defeated through a failure of the insured to comply with the terms of the contract as to payment of premiums. If the contention of counsel were tenable, there would be no reason, save sense of moral obligation, for the payment of any premiums upon insurance policies such as this after the one payment by which the issuing of a policy had been secured. This policy expressly makes the prepayment of premiums a condition precedent to the existence of the contract. It provides for separate insurance covering separate periods of time. Each premium payment, evidenced by a separate promissory note, is made a condition precedent to any contract to cover the period following the date when such payment was to be due. Without the payment due upon May 14, 1899, there was to be no contract of insurance for the period following that date. Without payment due upon June 14, 1899, there was to be no insurance for the period following thereafter. Neither the May 14th premium nor the June 14th premium were paid. The application for this policy provides as follows :

" Said policy to be written for four consecutive periods of two, three and five calendar months, respectively, from noon on the 14th day of March, 1899, each period

being covered by a distinct premium, and I hereby agree, for myself, my estate, and the beneficiary named herein, that no claim will be made on account of injuries received during any period for which its respective premium has not been paid in full in cash, except as provided by said policy in case of accident happening before first note becomes due."

The policy issued upon such application provides in part as follows:

" In consideration of the warranties made in the application for this policy, and of the payment in cash on or before the expiration of one calendar month from date hereof, of a certain note for six and 25-100 dollars, does hereby insure, as hereinafter provided, David Roberts, of the town of Chicago, county of Cook and State of Illinois, under the classification preferred, being a salesman by occupation, for a period of two calendar months, beginning at 12 o'clock, noon, standard time, of the day this policy is dated, viz., the 14th day of March, 1899; and in consideration of the further cash payment on or before the expiration of two calendar months from the date hereof, of a certain note for six 25-100 dollars, the insurance hereunder shall be in force for four calendar months from date of this policy; and in consideration of the further cash payment, on or before the expiration of three calendar months from date hereof, of a certain note for six 25-100 dollars, the insurance hereunder shall be in force for seven calendar months from date of this policy; and in consideration of the further cash payment, on or before the expiration of four calendar months from date hereof, of a certain note for six 25-100 dollars, the insurance hereunder shall be in force for twelve calendar months from date hereof. In event of valid claim arising under this policy prior to any or all of the notes above referred to becoming due (the insurance being at the time of the accident in full force and effect by reason of cash payments already made, except in case of accident happening before the first note becomes due), the amount due the insured shall be applied to the payment of said notes, so far as it will apply to the payment of one or more of them in full, and the balance, if any, shall be paid to the insured.    No partial payments shall be accepted upon any of these notes, and if accepted the same shall be regarded as an error, and shall not operate to extend the insurance under this policy. The possession by the com-

pany, or its agent, of any or all of the notes given in connection with the issue of this policy shall be conclusive evidence that same have not been paid, and that the insurance under this policy will cease to be in force at the expiration of the term provided for herein, and also as provided by the said note or notes. No agent has authority to waive or change any condition or provision of this policy, * * * and no waiver or change nor the issue of any permit will be recognized unless in writing signed by either the president, vice-president, secretary or assistant secretary of the company."

The notes given to evidence amount which would be required as premiums, were in form as follows:

"On or before the expiration of two calendar months from date hereof, for value received, I promise to pay to the order of the Ætna Life Insurance Company of Hartford, Conn., six 25-100 dollars, at room 301 Dearborn St., 225, the same being for the second premium payment upon accident policy No. 601,604 issued by said company.

It is understood and agreed that in case this note shall not be paid in full at maturity, said policy shall become null and void at the expiration of two calendar months from its date, and any partial payment made hereon shall not operate to extend the insurance under said policy beyond said term of two calendar months.

Due May 14, '99."

The contract of insurance does not purport to insure the life of Roberts beyond the period of two months from its issue. It insures for precisely two months, and makes provision by which a further contract of insurance under like terms and conditions may be entered into by the parties for further periods. As a part of such provision, and as a condition thereto, the prepayment of premiums by the insured is specified.

The question presented is not one of obligation upon the beneficiary. It is simply a question of whether any contract at all was made for the periods after May 14, 1899. And it is clear that there was none. That there might have been one if the premiums had been paid, is of no consequence. It may be true, as suggested by counsel for appellant, that courts are prone to construe life insurance con-

tracts favorably to beneficiaries. But we are aware of no case where the courts have gone to the length of making a contract by judicial construction which the insured did not see fit, or was not able, to make in his lifetime. That the payment of premiums by the insured is a condition precedent to, or at least concurrent with, the assuming of any obligation by the insurance company, under terms such as are embodied in this policy, seems beyond question. Parker v. Bankers Life Ass'n, 86 Ill. App. 322.

In disposing of that case this court said, quoting from Bane v. Travelers' Ins. Co., 85 Ky. 677:

"It was his duty, if he desired to continue the policy, to have paid the installments, and his failure to do so terminated the policy. It is really a misnomer to say that the policy in this instance was forfeited by the non-payment of the premium. The insurance, by the express terms of the policy, ceased because of such non-payment."

In Merchants Life Ass'n v. Treat, 98 Ill. App. 59, it was contended that a provision of a policy of insurance which limited the time within which a suit should be brought upon the policy, was not binding upon the beneficiary. This court held that the provision was a part of the contract of insurance, and that it in effect imposed a valid limitation upon that contract. By like reasoning, a provision for payment of premiums in advance as a condition to the continuance of insurance beyond a certain time, is a valid limitation of the contract. To say that such limitation does not operate as against a beneficiary, would be equivalent to saying that it could not operate at all. The fallacy of the contention is apparent.

Nor can the contention of counsel be sustained, that the facts of this case present a waiver of a forfeiture. There is presented no question of forfeiture. Beyond May 14, 1899, there was never any contract of insurance effected; there was nothing to be forfeited, and consequently no forfeiture to be waived.

That the retention of the notes given by Roberts operated to pay the premiums and thus create a contract, is expressly negatived by the terms of the agreement. The

policy provides that "the possession by the company, or its agent, of any or all of the notes given in connection with the issue of this policy, shall be conclusive evidence that same have not been paid and that the insurance under this policy will cease," etc. How this distinct agreement, as to what shall be the effect of a retention of the unpaid notes, can be read out of the contract, we can not understand. That the agents of the company attempted to obtain a payment of the notes, can not signify. As a matter of fact they were not paid.

In Parker v. Bankers' Life Ass'n, *supra*, this court said, in relation to a retention of promissory notes given to evidence premiums to become due:

" The forfeiture having occurred *eo instanti* on the default of the assured, and no subsequent act of appellee being necessary to effect that result, appellee's defense was then perfect, and the retention by it of the notes could not relieve the forfeiture or weaken the defense.".

The same conclusion, viz., that the retention of the notes " could not weaken the defense," obtains with even greater force in the case where no contract has been effected by reason of failure to prepay the premium.

We are of opinion that no cause of action was shown by plaintiff in error, and that the learned trial court properly directed a verdict for defendant in error. Affirmed.